Behram V. Parekh (SBN 180361)
bparekh@wisnerbaum.com
J. Conor Kennedy (SBN 354542)
ckennedy@wisnerbaum.com
**WISNER BAUM LLP**
11111 Santa Monica Blvd., Suite 1750
Los Angeles, CA 90025
Telephone (310) 207-3233
Facsimile  (310) 820-7444

*Counsel for Plaintiffs and all others
similarly situated*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

Fred Dickinson, Michelle L. Orth-Hutchinson, Chelsey N. Fleming, Walter Roberto Morales, Marsden Scott Zinda, Michael Cole, Laurie Singer, Kathie Zenie, Elizabeth Connolly, Sarah Fischer, Ricardo S. Gonzalez, Kiera J. Northington, Melissa Aguilar, Brenda A. Kealing, Roderick Smith, Betty Torres, Jordan Seigel, Zachary Joseph Panozzo, Lesa Locke, Debra Dean, Avus James, Bruce Sabala, James C. Posey, Holly Landry, Spencer Sawicki, Venesha M. Merrill, Andrew Franklin, Caleb Johnson, Virginia Richardson, Jennifer O'Dell, Dawn Taylor, Samuel Sweeney, Rafael Dias Monteiro Andrade, Robert L. Wheeler, John Scholz, Michelle Bizzarro, Jules M. Brendanawicz, Eric Schinasi, Dean Anderson, John H. Lunne, Susan Kushner Benson, Glorita Parton, James Hannon, Brenda A. Nagle, Susan Murray, Lewis Benavides, Sherry C. Vega, Sean Liston, Amy C.

CASE NO. '26CV0102 LL    MMP

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Barker, Jana Chiang, Richard T.
Strong, Margaret Y. Palmer, Vickie
McParlon, Gwendolyn N. Schroeder,
and Julie Ann Armour, on behalf of
themselves and all others similarly
situated,

                          Plaintiffs,

           v.

Dexcom, Inc. and Does 1-10,

                          Defendants.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

Page

I. SUMMARY OF THE CASE ................................................................................ 5

II. PARTIES ........................................................................................................... 6

III. JURISDICTION AND VENUE ....................................................................... 13

IV. STATEMENT OF FACTS ............................................................................... 13

    A.    General ................................................................................................. 13

    B.    Defendants And Their Warranties .................................................... 17

V.   CLASS ACTION ALLEGATIONS ................................................................ 17

    A.    The Class and Sub-Classes Definitions ........................................... 17

    B.    The Class and Sub-class Definitions Satisfy Rule 23 ...................... 22

VI. CAUSES OF ACTION .................................................................................... 25

    A.    Pre-Suit Notices .................................................................................. 25

    COUNT I – Magnuson Moss Warranty Act ........................................... 25

    Plaintiffs and the Class Against Defendants ........................................... 25

    COUNT II – Breach of Express Warranties ........................................... 27

    Plaintiffs and the Class Against Defendants ........................................... 27

    COUNT III – Breach of the UCC Implied Warranty of Merchantability ...................... 30

    Plaintiffs and Vast Majority of the Class Against Defendants ....................... 30

    COUNT IV – Breach of the UCC Implied Warranty of Fitness ..................... 33

    Plaintiffs and Vast Majority of the Class Against Defendants ....................... 33

    COUNT V – Negligent Misrepresentation and Omission ............................. 36

    Plaintiffs and the Class Against Defendants ........................................... 36

    COUNT V – Violation of State Consumer Protection Laws .......................... 38

    Plaintiffs and the Class Against Defendants ........................................... 38

VII. REQUEST FOR RELIEF ............................................................................... 45

VIII. DEMAND FOR JURY TRIAL..............................................................................46

On behalf of themselves and all others similarly situated, Plaintiffs Fred Dickinson, Michelle L. Orth-Hutchinson, Chelsey N. Fleming, Walter Roberto Morales, Marsden Scott Zinda, Michael Cole, Laurie Singer, Kathie Zenie, Elizabeth Connolly, Sarah Fischer, Ricardo S. Gonzalez, Kiera J. Northington, Melissa Aguilar, Brenda A. Kealing, Roderick Smith, Betty Torres, Jordan Seigel, Zachary Joseph Panozzo, Lesa Locke, Debra Dean, Avus James, Bruce Sabala, James C. Posey, Holly Landry, Spencer Sawicki, Venesha M. Merrill, Andrew Franklin, Caleb Johnson, Virginia Richardson, Jennifer O'Dell, Dawn Taylor, Samuel Sweeney, Rafael Dias Monteiro Andrade, Robert L. Wheeler, John Scholz, Michelle Bizzarro, Jules M. Brendanawicz, Eric Schinasi, Dean Anderson, John H. Lunne, Susan Kushner Benson, Glorita Parton, James Hannon, Brenda A. Nagle, Susan Murray, Lewis Benavides, Sherry C. Vega, Sean Liston, Amy C. Barker, Jana Chiang, Richard T. Strong, Margaret Y. Palmer, Vickie McParlon, Gwendolyn N. Schroeder, and Julie Ann Armour ("Plaintiffs") sue Defendants, Dexcom, Inc. and Does 1-10 ("Defendants") and in support thereof, state as to their own personal knowledge of facts relevant to them personally, and upon information and belief as to the remainder of the allegations, based on publicly available information, the following:

## I.

## SUMMARY OF THE CASE

1.     This lawsuit involves the manufacture, marketing and sale by Defendants of Dexcom G6 and G7 continuous glucose monitors ("G6 and G7" or "Products") that Defendants marketed and advertised to the public as being effective in monitoring consumers' blood glucose levels and warning consumers if their glucose levels were too low or too high.  Defendants represented to consumers that the Products used scientifically proven FDA cleared technology to effectively and accurately measure these levels and provide continuous monitoring of their blood glucose levels.  However, these representations were false, deceptive and

inaccurate.  As such, Defendants' actions violated the Magnuson Moss Warranty Act ("MMWA"), breached express warranties made by Defendant, breached implied contractual warranties imposed by law, and Defendants further violated numerous state consumer protection statutes and common laws.  This lawsuit is brought by Plaintiffs on behalf of themselves and the members of the Class and Sub-classes to seek redress for these violations and breaches.

## II.

## PARTIES

2.    Plaintiff Fred Dickinson is a citizen and resident of Jefferson County, Alabama.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

3.    Plaintiff Michelle L. Orth-Hutchinson is a citizen and resident of Pima County, Arizona.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

4.    Plaintiff Chelsey N. Fleming is a citizen and resident of Yavapai County, Arizona.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

5.    Plaintiff Walter Roberto Morales is a citizen and resident of Los Angeles County, California.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

6.    Plaintiff Marsden Scott Zinda is a citizen and resident of San Bernardino County, California.  Plaintiff purchased G7 devices and sensors and used them during the relevant time period.

7.    Plaintiff Michael Cole is a citizen and resident of Teller County, Colorado.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

8.    Plaintiff Laurie Singer is a citizen and resident of Weld County, Colorado.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used

them during the relevant time period.

9.     Plaintiff Kathie Zenie is a citizen and resident of Litchfield County, Connecticut.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

10.     Plaintiff Elizabeth Connolly is a citizen and resident of Middlesex County, Connecticut.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

11.     Plaintiff Sarah Fischer is a citizen and resident of the District of Columbia.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

12.     Plaintiff Ricardo S. Gonzalez is a citizen and resident of Miami-Dade County, Florida.  Plaintiff purchased Dexcom G6 devices and sensors and used them during the relevant time period.

13.     Plaintiff Kiera J. Northington is a citizen and resident of DeKalb County, Georgia.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

14.     Plaintiff Melissa Aguilar is a citizen and resident of Bannock County, Idaho.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

15.     Plaintiff Brenda A. Kealing is a citizen and resident of Ada County, Idaho.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

16.     Plaintiff Roderick Smith is a citizen and resident of Cook County, Illinois.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

17.     Plaintiff Betty Torres is a citizen and resident of Cook County, Illinois.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

18.    Plaintiff Jordan Seigel is a citizen and resident of Hamilton County, Indiana.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

19.    Plaintiff Zachary Joseph Panozzo is a citizen and resident of Lake County, Indiana.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

20.    Plaintiff Lesa Locke is a citizen and resident of Jefferson County, Kentucky.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

21.    Plaintiff Debra Dean is a citizen and resident of Marshall County, Kentucky.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

22.    Plaintiff Avus James is a citizen and resident of Orleans Parish County, Louisiana.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

23.    Plaintiff Bruce Sabala is a citizen and resident of Montgomery County, Maryland.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

24.    Plaintiff James C. Posey is a citizen and resident of Anne Arundel County, Maryland.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

25.    Plaintiff Holly Landry is a citizen and resident of Bristol County, Massachusetts.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

26.    Plaintiff Spencer Sawicki is a citizen and resident of Middlesex County, Massachusetts.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

27.    Plaintiff Venesha M. Merrill is a citizen and resident of Genesee

County, Michigan.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

28.    Plaintiff Andrew Franklin is a citizen and resident of Hennepin County, Minnesota.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

29.    Plaintiff Caleb Johnson is a citizen and resident of Hennepin County, Minnesota.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

30.    Plaintiff Virginia Richardson is a citizen and resident of Harrison County, Mississippi.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

31.    Plaintiff Jennifer O'Dell is a citizen and resident of Franklin County, Missouri.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

32.    Plaintiff Dawn Taylor is a citizen and resident of Ripley County, Missouri.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

33.    Plaintiff Samuel Sweeney is a citizen and resident of Douglas County, Nebraska.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

34.    Plaintiff Rafael Dias Monteiro Andrade is a citizen and resident of Clark County, Nevada.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

35.    Plaintiff Robert L. Wheeler is a citizen and resident of Douglas County, Nevada.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

36.    Plaintiff John Scholz is a citizen and resident of Burlington County, New Jersey.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used

them during the relevant time period.

37.    Plaintiff Michelle Bizzarro is a citizen and resident of Middlesex County, New Jersey.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

38.    Plaintiff Jules M. Brendanawicz is a citizen and resident of New York County, New York.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

39.    Plaintiff Eric Schinasi is a citizen and resident of Nassau County, New York.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

40.    Plaintiff Dean Anderson is a citizen and resident of Grand Forks County, North Dakota.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

41.    Plaintiff John H. Lunne is a citizen and resident of Montgomery County, Ohio.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

42.    Plaintiff Susan Kushner Benson is a citizen and resident of Summit County, Ohio.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

43.    Plaintiff Glorita Parton is a citizen and resident of Kay County, Oklahoma.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

44.    Plaintiff James Hannon is a citizen and resident of Union County, Pennsylvania.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

45.    Plaintiff Brenda A. Nagle is a citizen and resident of Lehigh County, Pennsylvania.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

46.    Plaintiff Susan Murray is a citizen and resident of McNairy County, Tennessee.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

47.    Plaintiff Lewis Benavides is a citizen and resident of Denton County, Texas.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

48.    Plaintiff Sherry C. Vega is a citizen and resident of Dallas County, Texas.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

49.    Plaintiff Sean Liston is a citizen and resident of Salt Lake County, Utah.  Plaintiff purchased Dexcom G6 devices and sensors and used them during the relevant time period.

50.    Plaintiff Amy C. Barker is a citizen and resident of Pulaski County, Virginia.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

51.    Plaintiff Jana Chiang is a citizen and resident of Benton County, Washington.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

52.    Plaintiff Richard T. Strong is a citizen and resident of Whatcom County, Washington.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

53.    Plaintiff Margaret Y. Palmer is a citizen and resident of Mercer County, West Virginia.  Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

54.    Plaintiff Vickie McParlon is a citizen and resident of Winnebago County, Wisconsin.  Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

55.    Plaintiff Gwendolyn N. Schroeder is a citizen and resident of La

Crosse County, Wisconsin. Plaintiff purchased Dexcom G6 and G7 devices and sensors and used them during the relevant time period.

56. Plaintiff Julie Ann Armour is a citizen and resident of Campbell County, Wyoming. Plaintiff purchased Dexcom G7 devices and sensors and used them during the relevant time period.

57. Each Plaintiff paid in part or in whole for her or his Dexcom G6 and/or G7 devices and sensors. Each Plaintiff's insurance company or companies, i.e. third-party payors, also paid in part or in whole for such devices and sensors. Prior to purchasing such device and sensors, each Plaintiff saw commercials regarding the device wherein she or he saw representations and warranties regarding the device and sensors. Each Plaintiff also visited the Dexcom website, wherein she or he saw representations and warranties regarding the device and sensors. Each Plaintiff also downloaded and used Dexcom software. Defendants' G6 and/or G7 devices did not work as advertised and warranted because each Plaintiff experienced incorrect readings from the Dexcom G6 and/or G7 devices and sensors when she or he would compare them to manually taken blood sugar readings and/or the devices failed to appropriately alert the Plaintiff to high and/or low readings.

58. Defendant, Dexcom, Inc., according to its latest Form 8-K filed with the Securities and Exchange Commission, is a Delaware corporation with its principal place of business at 6340 Sequence Drive, San Diego, California 92121. Dexcom, Inc. does business in California and throughout the United States.

59. Plaintiffs do not know the true names or capacities of the persons or entities sued herein as DOES l-10, inclusive, and therefore sues such Defendants by fictitious names. Plaintiffs are informed and believe, and upon such information and belief allege, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiffs and the members of the class as alleged herein. Plaintiffs will amend this complaint to set forth the true names and capacities of these Defendants when they have been ascertained, along with

appropriate charging allegations, as may be necessary.

## III.

## JURISDICTION AND VENUE

60.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(d)(2) (the Class Action Fairness Act), as the individual Plaintiffs are citizens of California and the other members of the putative Class are citizens of all of the other United States, which renders the majority of class members diverse from the Defendants, the putative Class comprises more than 100 persons, and the aggregate amount in controversy exceeds the jurisdictional amount of $5,000,000.

61.    Venue is appropriate in this District because Defendant Dexcom, Inc. is a resident of the District, because the acts and occurrences that are the subject matter of their claims and of many other Class members occurred in whole or substantial part in the District, and Defendant Dexcom, Inc. extensively sold Dexcom branded goods within the District.

62.    This Court has personal jurisdiction over Defendant Dexcom, Inc. because Dexcom is headquartered in San Diego, California.

## IV.

## STATEMENT OF FACTS

### A.    General

63.     This is a consumer class action lawsuit brought pursuant to Federal Rules of Civil Procedure 23(a) and (b).

64.    Defendants are designers, manufacturers, and sellers of, amongst other products, continuous glucose monitoring devices ("CGM").

65.    CGMs are used by consumers to monitor their blood glucose on a continuous basis.

66.    Dexcom's G6 CGM was cleared by the FDA in March 2018, and first available in the United States market in June 2018.

67.    Dexcom's G7 CGM was cleared by the FDA in December 2022, and

first available in the United States market in February 2023.

68.     Dexcom markets its G6 CGM claiming that:

The Dexcom G6 Continuous Glucose Monitoring (CGM) System sends real-time glucose readings automatically to a compatible smart device or Dexcom receiver. No fingersticks, no scanning. It is proven to lower A1C, and features a 10-day sensor that is easy to use.

69.     In a press release issued on December 8, 2022 announcing the FDA's clearance of the G7, Dexcom claimed:

With an overall MARD of 8.2%, Dexcom G7 is the most accurate CGM cleared by the FDA, building on the trusted performance of Dexcom CGM, which is clinically proven to lower A1C, reduce hyper- and hypoglycemia and increase time in range.

14.     Dexcom further claimed in the same press release:

The system features a predictive low alert that provides a 20-minute advance warning of potentially dangerous low glucose levels so users can act quickly to avoid a hypoglycemic event. This critical feature continues to be at the forefront of the Dexcom experience, with more than 52 million Urgent Low Soon alerts acknowledged – more than 11 million of those in the middle of the night.

70.     Dexcom marketing information on its website, during the relevant time frame, claimed the following about the G7:

The Dexcom G7 Continuous Glucose Monitoring (CGM) System is powerful, easy to use, and made to work for you. CGM is a way to track your glucose 24/7 using a wearable sensor. Dexcom CGM Systems send your glucose numbers to a smart device or handheld receiver in real time, without the hassle of fingersticks or scanning. Having easy access to real-time CGM data helps you make better food, activity, and medication decisions in the moment so you can better manage your glucose and achieve results like lower A1C and more time in range.

71.     Dexcom's marketing information on its website during the relevant time frame further claimed, under the heading "Dexcom G7 offers industry-leading accuracy":

One way CGM accuracy is measured is by MARD (mean absolute relative difference). The smaller the MARD number, the higher the accuracy. With a MARD of 8.2%, Dexcom G7 is the most accurate

14

CGM system available.

The more accurate your CGM readings, the clearer the picture you get of what's happening in your body. Having accurate readings is extremely important when you depend on readings to make diabetes management decisions. Dexcom G7 is highly accurate when your glucose is low or high, and when it's changing quickly, giving you the confidence to make decisions when it's most important.

72.    However, in an FDA Warning Letter sent to Dexcom on March 4, 2025, the FDA told Dexcom that a change in the material used to make part of the G6 and G7 sensors was made without the appropriate pre-market clearance required by the FDA and resulted in the G6 and G7 sensors made with that material to be adulterated.

73.    Further, the change in materials caused the G6 and G7 sensors to have considerably greater variability than the readings from the sensors made with the approved material and resulted in higher risks for consumers who used the sensors made with the new material.

74.    In relevant part, the FDA Warning Letter dated March 4, 2025 stated the following (redaction of terms replaced with "(b)(4)" in original):

Our inspection revealed that the G6 and G7 Continuous Glucose Monitoring Systems are adulterated under section 501(f) (1)(8) of the Act, 21 U.S.C. § 351(f)(1)(8), because your firm does not have approved applications for premarket approval (PMA) in effect pursuant to section 515(a) of the Act, 21 U.S.C. § 360e(a), or approved applications for an investigational device exemption under section 520(9) of the Act, 21 U.S.C. § 360j(g). The devices are also misbranded under section 502(0) the Act, 21 U.S.C. § 352(0), because your firm introduced or delivered for introduction into interstate commerce for commercial distribution these devices with major changes or modifications to the devices without submitting a new premarket notification to FDA, as required by section 510(k) of the Act, 21 U.S.C. § 360(k), and 21 CFR 807.81(a)(3). Specifically, your firm modified the G6 and G7 sensors by replacing the (b)(4) with (b)(4) used in the (b)(4). The G6 device was originally cleared under K182041 and the G7 device was originally cleared under K213919. The pivotal clinical studies submitted in the original 510(k) submissions for these devices

used exclusively (b)(4) sensors. The (b)(4) is a critical component in G6 and G7 sensors. Your firm also conducted two clinical studies which demonstrated that performance of sensors constructed with (b)(4) had significantly greater variability than that of sensors constructed with (b)(4). Additionally, as discussed in item 4 above, your December 3, 2024, response includes the Sensor Level Performance Equivalency of (b)(4) and (b)(4), which shows a significant difference in the standard deviation (SD) of glucose sensitivities between sensors built with (b)(4) and (b)(4). This difference in SD indicates greater clinical performance variation for sensors with (b)(4). The larger inaccuracies in (b)(4)-coated sensors cause higher risks for users who rely on the sensors to dose insulin or make other diabetes treatment decisions. Therefore, we do not agree your firm has shown equivalency between (b)(4) and (b)(4) to justify that such a change does not require a new premarket submission. The variability differences could significantly affect the safety or effectiveness of the device within the meaning of 21 CFR 807.81(a)(3). Accordingly, your firm was required to submit a new premarket notification submission under section 510(k) of the Act, 21 U.S.C. § 360(k), to FDA at least 90 days before you proposed to begin the introduction or delivery for introduction into interstate commerce for commercial distribution of the modified G6 and G7 sensors. Additionally, your response commits to ceasing distribution of the G7 sensors with (b)(4) until additional testing is completed; however, it does not address the G6 sensors with (b)(4). Your response also does not commit to submitting a new premarket submission for the change to (b)(4) for either the G6 or G7 devices.

75.    By selling these defective G6 and G7 devices to Plaintiffs and the putative class, Defendants sold them a product that should not have been available for sale in the market as an FDA cleared device, which was inferior in quality to the product as warranted, advertised and marketed by Defendants, and which did not perform as warranted, advertised, marketed by Defendants.

76.    In other words, Plaintiffs and Class members did not get the benefit of their bargains. Plaintiffs and Class members were misled into purchasing Products that did not meet their expectations. The Products are not as valuable as the prices Plaintiffs and Class members paid for them.

77.    Therefore, Plaintiffs and Class members suffered actual damages as a result of Defendants' actions.  Plaintiffs and the other Class members seek either full refund of the purchase prices of the Products or recovery of the difference between the prices paid for the Products and the prices that the Products would have commanded in the marketplace if they had been marketed truthfully.

**B.    Defendants And Their Warranties**

78.    Defendants explicitly warranted in their advertising, packaging, and labeling that their Products were FDA cleared;

79.    Defendants explicitly warranted in their advertising, packaging, and labeling that their Products were capable of providing accurate continuous blood glucose monitoring;

80.    Defendants impliedly warranted, by explicitly stating that their product was FDA cleared, that it was made according to the specifications and processes approved by the FDA;

81.    Defendants impliedly warranted that the Products, as sold, were of the same quality as those cleared by the FDA.

# V.

# CLASS ACTION ALLEGATIONS

**A. The Class and Sub-Classes Definitions**

82.    Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) Plaintiffs bring this action on behalf of themselves, and all others similarly situated, as representatives of the following class (the "Class"):

> All residents (individuals, corporations, partnerships and all legal entities) of the United States (the fifty states and the District of Columbia) who, within the applicable statute of limitations purchased a Dexcom G6 and/or G7 continuous glucose monitoring device and/or sensor ("that was made using sensor materials different than that approved by the FDA.")

83.    Plaintiffs allege additional sub-classes for all residents in each State, territory, or possession – or combination(s) of States, territories, or possessions to

the extent class members from these jurisdictions can be grouped together for purposes of class treatment given that Rule 23 and choice of law principles permit certification of subgroups of states and provide that relatively minor differences in state law that can be overcome by grouping similar laws together.    Plaintiffs reserve the right to modify any class or sub-class definition at or prior to seeking class certification.

84.    These additional sub-classes include sub-classes of all residents who, during the period when Defendants' Products were defective, purchased a Dexcom G6 and/or G7 continuous glucose monitoring device and/or sensor that was made using sensor materials different than that approved by the FDA (intended for personal or household use).  These include but are not limited to the following:

a.    Plaintiff Fred Dickinson seeks to represent an Alabama sub-class and/or sub-class(es) of states with similar applicable laws to Alabama.

b.    Plaintiffs Michelle L. Orth-Hutchinson and Chelsey N. Fleming seek to represent an Arizona sub-class and/or sub-class(es) of states with similar applicable laws to Arizona.

c.    Plaintiffs Walter Roberto Morales and Marsden Scott Zinda seek to represent a California sub-class and/or sub-class(es) of states with similar applicable laws to California.

d.    Plaintiffs Michael Cole and Laurie Singer seek to represent a Colorado sub-class and/or sub-class(es) of states with similar applicable laws to Colorado.

e.    Plaintiffs Kathie Zenie and Elizabeth Connolly seek to represent a Connecticut sub-class and/or sub-class(es) of states with similar applicable laws to Connecticut.

f.    Plaintiff Sarah Fischer seeks to represent a District of Columbia sub-class and/or sub-class(es) of states with similar applicable laws to

District of Columbia.

g.      Plaintiff Ricardo S. Gonzalez seeks to represent a Florida sub-class and/or sub-class(es) of states with similar applicable laws to Florida.

h.      Plaintiff Kiera J. Northington seeks to represent a Georgia sub-class and/or sub-class(es) of states with similar applicable laws to Georgia.

i.      Plaintiffs Melissa Aguilar and Brenda A. Kealing seek to represent an Idaho sub-class and/or sub-class(es) of states with similar applicable laws to Idaho.

j.      Plaintiffs Roderick Smith and Betty Torres seek to represent an Illinois sub-class and/or sub-class(es) of states with similar applicable laws to Illinois.

k.      Plaintiffs Jordan Siegel and Zachary Joseph Panozzo seek to represent an Indiana sub-class and/or sub-class(es) of states with similar applicable laws to Indiana.

l.      Plaintiffs Lesa Locke and Debra Dean seek to represent a Kentucky sub-class and/or sub-class(es) of states with similar applicable laws to Kentucky.

m.      Plaintiff Avus James seeks to represent a Louisiana sub-class and/or sub-class(es) of states with similar applicable laws to Louisiana.

n.      Plaintiffs Bruce Sabala and James C. Posey seek to represent a Maryland sub-class and/or sub-class(es) of states with similar applicable laws to Maryland.

o.      Plaintiffs Holly Landry and Spencer Sawicki seek to represent a Massachusetts sub-class and/or sub-class(es) of states with similar applicable laws to Massachusetts.

p.      Plaintiff Venesha M. Merrill seeks to represent a Michigan sub-class and/or sub-class(es) of states with similar applicable laws to Michigan.

q.  Plaintiffs Andrew Franklin and Caleb Johnson seek to represent a Minnesota sub-class and/or sub-class(es) of states with similar applicable laws to Minnesota.

r.  Plaintiff Virginia Richardson seeks to represent a Mississippi sub-class and/or sub-class(es) of states with similar applicable laws to Mississippi.

s.  Plaintiffs Jennifer O'Dell and Dawn Taylor seek to represent a Missouri sub-class and/or sub-class(es) of states with similar applicable laws to Missouri.

t.  Plaintiff Samuel Sweeney seeks to represent a Nebraska sub-class and/or sub-class(es) of states with similar applicable laws to Nebraska.

u.  Plaintiffs Rafael Dias Monteiro Andrade and Robert L. Wheeler seek to represent a Nevada sub-class and/or sub-class(es) of states with similar applicable laws to Nevada.

v.  Plaintiffs John Scholz and Michelle Bizzarro seek to represent a New Jersey sub-class and/or sub-class(es) of states with similar applicable laws to New Jersey.

w.  Plaintiffs Jules M. Brendanawicz and Eric Schinasi seek to represent a New York sub-class and/or sub-class(es) of states with similar applicable laws to New York.

x.  Plaintiff Dean Anderson seeks to represent a North Dakota sub-class and/or sub-class(es) of states with similar applicable laws to North Dakota.

y.  Plaintiffs John H. Lunne and Susan Kushner Benson seek to represent an Ohio sub-class and/or sub-class(es) of states with similar applicable laws to Ohio.

z.  Plaintiff Glorita Parton seeks to represent an Oklahoma sub-class

and/or sub-class(es) of states with similar applicable laws to
Oklahoma.

aa.    Plaintiffs James Hannon and Brenda A. Nagle seek to represent a
Pennsylvania sub-class and/or sub-class(es) of states with similar
applicable laws to Pennsylvania.

bb.    Plaintiff Susan Murray seeks to represent a Tennessee sub-class
and/or sub-class(es) of states with similar applicable laws to
Tennessee.

cc.    Plaintiffs Lewis Benavides and Sherry C. Vega seek to represent a
Texas sub-class and/or sub-class(es) of states with similar applicable
laws to Texas.

dd.    Plaintiff Sean Liston seeks to represent a Utah sub-class and/or sub-
class(es) of states with similar applicable laws to Utah.

ee.    Plaintiff Amy C. Barker seeks to represent a Virginia sub-class
and/or sub-class(es) of states with similar applicable laws to
Virginia.

ff.    Plaintiffs Jana Chiang and Richard T. Strong seek to represent a
Washington sub-class and/or sub-class(es) of states with similar
applicable laws to Washington.

gg.    Plaintiff Margaret Y. Palmer seeks to represent a West Virginia sub-
class and/or sub-class(es) of states with similar applicable laws to
West Virginia.

hh.    Plaintiffs Vickie McParlon and Gwendolyn N. Schroeder  seek to
represent a Wisconsin sub-class and/or sub-class(es) of states with
similar applicable laws to Wisconsin.

ii.    Plaintiff Julie Ann Armour seeks to represent a Wyoming sub-class
and/or sub-class(es) of states with similar applicable laws to
Wyoming.

jj.    Plaintiffs reserve the right to amend this Complaint to add additional class representatives as appropriate or necessary for additional sub-classes for one or more states.

85.    Collectively, the foregoing Nationwide Class and its sub-classes are referred to as the "Class."

86.    Excluded from the Class are:

a.    Any judge or magistrate presiding over this action, and members of their families.

b.    Defendants, and their employees, officers, directors, and agents.

c.    Defendants' legal representatives, assigns and successors.

d.    All persons who properly execute and file a timely request for exclusion from any Court-approved class.

**B.    The Class and Sub-class Definitions Satisfy Rule 23**

87.    As alleged throughout this Complaint, the Defendants engaged in uniform and standardized conduct towards the Classes.  The Defendants did not differentiate, in their degree of care or candor, their actions or inactions or in the content of their statements or omissions, among individual Class Members.  The objective facts on these subjects are the same for all Class Members.  Within each Claim for Relief asserted by the respective Classes, the same legal standards govern.   Additionally, many states share the same legal standards and elements of proof, facilitating the certification of multistate classes for some or all of the claims.

88.    No actual conflicts of laws exist between the laws of Plaintiffs' home states, and the laws of other class members' states.  Or alternatively, any potential conflict is a false one.  The lack of conflict, or the false conflict, between the laws of Plaintiffs' home states and the laws of other class members' states means it is appropriate to certify the Nationwide Class under the laws of the fifty states and the District of Columbia.

89.    Plaintiffs reserve the right to narrow or expand the foregoing class

definition, or to create or modify sub-classes as the Court deems necessary.

90.     Plaintiffs meet the prerequisites of Rule 23(a) to bring this action on behalf of the Class.

91.     <u>Numerosity</u>: The Class and the Sub-classes are each so numerous that joinder of all members is impracticable.  Although discovery will be necessary to establish the exact sizes of the Class and Sub-classes, it is likely, based on the nature of Defendants' business, that the Class numbers in the hundreds of thousands or millions, and that each Sub-class numbers in the hundreds or tens of thousands.

92.     <u>Commonality</u>: There are questions of fact and law common to the Class that predominate over any questions affecting only individual members.  The common questions include:

a.     Whether Defendants expressly warranted in writing that the Products were FDA approved;

b.     Whether Dexcom expressly warranted in writing that the Products were capable of accurately measuring blood glucose levels on a continuous basis;

c.     Whether Defendants breached these express written warranties;

d.     Whether Defendants breached the implied warranty of merchantability for a particular purpose and/or for its ordinary purpose;

e.     Whether Defendants' breaches of warranties damaged Plaintiffs and the Class; and

f.     The appropriate measure of damages to be received by Plaintiffs and the Class.

93.     <u>Typicality</u>: Plaintiffs' claims are typical of Class Members' claims.  Plaintiffs and Class Members all suffered the same type of economic harm.  Plaintiffs have substantially the same interest in this matter as all other Class

Members, and their claims arise out of the same set of facts and conduct as the claims of all other Class Members.

94. <u>Adequacy of Representation</u>: Plaintiffs' claims are typical of the claims of the other members of the Class and of their respective Sub-classes because they arise under the same legal theories and out of the same consistent practices of Defendants. Plaintiffs can and will fairly and adequately represent and protect the interests of the Class and their respective Sub-classes and have no interests that conflict with the interests of the Class and their respective Sub-classes. This is so because:

      a. All of the questions of law and fact regarding the liability of the Defendants are common to the Class and Sub-classes and predominate over any individual issues that may exist, such that by prevailing on their own claims, Plaintiffs will necessarily establish the liability of the Defendants to all Class and Sub-class members;

      b. Plaintiffs and their counsel have no interests different from or in conflict with the interests of the other members of the Class and the Sub-classes;

      c. Plaintiffs have retained competent attorneys who are experienced in the conduct of class actions. Plaintiffs and their counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibility to the Class members and are determined to diligently discharge those duties to obtain the best possible recovery for the Class.

95. <u>Superiority</u>: The requirements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual Class Members, and a class action is the superior method

for fair and efficient adjudication of the controversy.  Although many other Class Members have claims against Defendants, the likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.  Serial adjudication in numerous venues would not be efficient, timely or proper.  Judicial resources would be unnecessarily depleted by resolution of individual claims.  Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible.  In addition, individualized rulings and judgments could result in inconsistent relief for similarly situated Plaintiffs.  Plaintiffs' counsel, highly experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation, foresee little difficulty in the management of this case as a class action.

## VI.

## CAUSES OF ACTION

### A. Pre-Suit Notices

96.    With respect to all causes of action asserted below, on one or more occasions, each Plaintiff has given to Defendants one or more of all pre-suit and pre-claim notices required by law.

### COUNT I – Magnuson Moss Warranty Act
### Plaintiffs and the Class Against Defendants

97.    Plaintiffs and the Class incorporate herein by reference each preceding and succeeding paragraph as if fully set forth here verbatim.

98.    This cause of action is alleged on behalf of Plaintiffs and the National Class against Defendants.

99.    The Products are consumer products as defined in 15 U.S.C. § 2301(1).

100.    Plaintiffs and all the members of the Class are consumers as defined in 15 U.S.C. § 2301(3).

101.    Defendants are suppliers and warrantors as defined in 15 U.S.C. §

2301(4) & (5).

102.   In connection with their sale of the Products, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6) via their written advertisements, product labeling and package inserts, which warranted that the Products were FDA approved and were capable of accurately measuring blood glucose levels on a continuous basis.

103.   In connection with their sale of the Products, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6) via their written advertisements and press releases, which warranted that their Products were the most accurate CGMs approved by the FDA, stating *inter alia*, the G7 had "industry-leading accuracy" and that "with an overall MARD of 8.2%, Dexcom G7 is the most accurate CGM cleared by the FDA, building on the trusted performance of Dexcom CGM, which is clinically proven to lower A1C, reduce hyper- and hypoglycemia and increase time in range."

104.   In connection with their sale of the Products, Defendants gave to all the putative Class Members who purchased one or more of the Products an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability.  Specifically, Defendants warranted that the Products were fit for their ordinary purpose as continuous glucose monitors, would pass without objection in the trade, and would conform to the promises and affirmations of fact made on their containers or labels.

105.   Defendants are liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1), because the Products failed to comply with their written warranties and the implied warranty of merchantability.  Specifically, the Products were not, in fact, manufactured according to the specifications approved by the FDA, nor were they capable of accurately and continuously monitoring blood glucose levels. Further, because of this, the Products are not fit for their ordinary use as continuous glucose monitors because they do not in fact continuously and accurately measure

blood glucose levels.  Lastly, the Products do not pass without objection in the trade because they are incapable of performing and so do not in fact perform the functions that they were claimed to perform because they do not in fact continuously and accurately measure blood glucose levels.

106.  Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and the Class are entitled to recover the damages caused to them by Defendants' breaches of written and implied warranties, which damages either constitute the full purchase prices of the Products or the difference in value between the Products as warranted and the Products as actually sold.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiffs and the Class for and in connection with the commencement and prosecution of this action.

### COUNT II – Breach of Express Warranties
### Plaintiffs and the Class Against Defendants

107.  Plaintiffs and the Class incorporate herein by reference each preceding and succeeding paragraph as if fully set forth verbatim.

108.  This cause of action is alleged on behalf of Plaintiffs and the National Class against Defendants.

109.  Defendants' affirmations of fact and promises made to Plaintiffs and the Class regarding the Products and their descriptions of the Products as contained in Defendants' advertisements, product packaging and labeling and package inserts became part of the basis of the bargain between Defendants and Plaintiffs and the Class, thereby creating express warranties that the Products would conform to those affirmations of fact, promises and descriptions as described above  Defendants breached those express warranties because the Products do not perform as warranted.

110.  Plaintiffs, and each member of the Class, formed a contract with

Defendants at the time Plaintiffs and the other Class Members purchased the Products.  The terms of the contract include the promises and affirmations of fact made by Defendants on the Products' packaging and through marketing and advertising, including that the Products would be the equivalents of the CGM approved by the FDA and would be of same "quality" and have the same safety and efficacy profile as the G6s and G7s approved by the FDA.  In fact, Defendants marketed the G7 as "the most accurate CGM cleared by the FDA." This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiffs and the members of the Class and Defendants.

111.   Defendants warranted that its CGMs were fit for their ordinary use, i.e., as an FDA-approved continuous glucose monitor.  In other words, Defendants expressly warranted that their products were the same as their precedent devices.

112.   The express warranty provision, contained in U.C.C. § 2-313, has been codified and adopted in each state (and is recognized in Louisiana through its Civil Code).  At all times relevant all the following States and Territories have codified and adopted the relevant provisions: Ala. Code § 7-2-313; Ariz. Rev. Stat. Ann. § 47-2313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. Ann. § 42a-2-313; D.C. Code. § 28:2-313;  Fla. Stat. Ann. § 672.313;  Ga. Code. Ann. § 11-2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code Ann. § 26-1-2-313; Ky. Rev. Stat. Ann. § 355.2-313; La. Civ. Code Ann. art. 2520; Md. Com. Code. Ann. § 2-313;  Mass. Gen. Laws Ch. 106 § 2-313;  Mich. Comp. Laws Ann. § 440.2313;  Minn. Stat. Ann. § 336.2-313;  Miss. Code Ann. § 75-2-313;  Mo. Rev. Stat. § 400.2-313; Neb. Rev. Stat. U.C.C. § 2-313; Nev. Rev. Stat. § 104.2313;  N.J. Stat. Ann. § 12A:2-313;  N.Y. U.C.C. Law § 2-313; N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A § 2-313; 13 Pa. C.S. § 2313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2-313; Utah Code Ann. § 70A-2-313; Va. Code § 8.2-313; W. Va. Code § 46-2-

313; Wash. Rev. Code § 62A.2-313; Wis. Stat. Ann. § 402.313 and Wyo. Stat. § 34.1-2-313.

113.    At the time that each Defendant marketed and sold its CGMs, they recognized the purposes for which the Products would be used, and expressly warranted the products were not adulterated or misbranded.  These affirmative representations became part of the basis of the bargain in every purchase by Plaintiffs and other Class Members including but not limited to express representations made in referring to their Products as FDA-compliant.

114.    Plaintiffs and each member of the Class are natural persons who are reasonably expected to use or be affected by the adulterated and/or misbranded CGMs manufactured and sold by Defendants.

115.    Each Defendant breached its express warranties with respect to its CGMs as they were not of merchantable quality, were not fit for their ordinary purpose, and did not comply with FDA regulations and were adulterated and misbranded.

116.    Plaintiffs and each member of the Class would not have purchased the Defendants' products had they known these devices were not the same as the precedent devices and did not have the same accuracy.

117.    To the extent privity may be required, Plaintiffs and the members of the Class can establish privity with Defendants, or, alternatively, can establish that they fall into an exception to a privity requirement.

118.    Plaintiffs and the members of the Class relied on Defendants' warranties.

119.    Plaintiffs and the members of the Class were foreseeable and intended third-party beneficiaries of Defendants' sale of the Products, and/or of contracts between Defendants and the distributors or sellers of the Products.

120.    The Products were expected to reach and did in fact reach their ultimate consumer, including Plaintiffs, without substantial change in the condition

in which they were manufactured by Defendant.

121.   In order to use their devices, Plaintiffs were required to register their devices with Defendant, and relied on software developed and updated by the Defendant to monitor their glucose.

122.   The Products are medical devices that affect human health and life; and therefore, they implicate the broad public policy of protecting human health and life.

123.   Enforcement of a privity requirement would unfairly prejudice Plaintiffs and the members of the Class, who relied on Defendants' warranties.

124.   As a proximate result of Defendants' breaches of express warranties, Plaintiffs and the Class have been damaged either in the full amount of the purchase prices of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

## COUNT III – Breach of the UCC Implied Warranty of Merchantability
## Plaintiffs and Vast Majority of the Class Against Defendants

125.   Plaintiffs and the Class incorporate herein by reference each preceding and succeeding paragraph as if fully set forth verbatim.

126.   This cause of action is alleged on behalf of Plaintiffs and the vast majority of the national Class against Defendants.

127.   The implied warranty of merchantability, contained in U.C.C. § 2-314, has been codified in each state (and is recognized in Louisiana through its Civil Code).  *See, e.g.*, Ala. Code § 7-2-314, *et seq.*; Ariz. Rev. Stat. Ann. § 47-2314, *et seq.*; Cal. Com. Code § 2314, *et seq.*; Colo. Rev. Stat. § 4-2-314, *et seq.*; Conn. Gen. Stat. Ann. § 42a-2-314, *et seq.*; D.C. Code Ann. § 28:2-314, *et seq.*; Fla. Stat. Ann. § 672.314, *et seq.*; O.C.G.A. § 11-2-314, *et seq.*; Idaho Code § 28-2-314, *et seq.*; Ill. Comp. Stat. Ann. Ch. 810, 5/2-314, *et seq.*; Ind. Code Ann. § 26-1-2-314, *et seq.*; Ky. Rev. Stat. Ann. § 355.2-314, *et seq.*; La. Civ. Code Ann. art. 2520, *et seq.*; Md. Code Ann., Com. Law § 2-314, *et seq.*; Mass. Gen. Laws Ann. Ch. 106,

§ 2-314, *et seq*.; Mich. Comp. Laws Ann. § 440.2314, *et seq*.; Minn. Stat. Ann. § 336.2-314, *et seq*.; Miss. Code Ann. § 75-2-314, *et seq*.; Mo. Rev. Stat. § 400.2-314, *et seq*.; Mont. Code Ann. § 30-2-314, *et seq*.; Neb. Rev. Stat. § 2-314, *et seq*.; Nev. Rev. Stat. § 104.2314, *et seq*.; N.H. Rev. Stat. Ann. § 382-A:2-314, *et seq*.; N.J. Stat. Ann. § 12A:2-314, *et seq*.; N.M. Stat. Ann. § 55-2-314, *et seq*.; N.Y. U.C.C. Law § 2-314, *et seq*.; N.C. Gen. Stat. Ann. § 25-2-314, *et seq*.; N.D. Cent. Code § 41-02-31, *et seq*.; Ohio Rev. Code Ann. § 1302.27, *et seq*.; Okla. Stat. tit. 12A, § 2-314, *et seq*.; Or. Rev. Stat. § 72.3140, *et seq*.; 13 Pa. Stat. Ann. § 2314, *et seq*.; R.I. Gen. Laws § 6A-2-314, *et seq*.; S.C. Code Ann. § 36-2-314, *et seq*.; S.D. Codified Laws § 57A-2-314, *et seq*.; Tenn. Code Ann. § 47-2-314, *et seq*.; Tex. Bus. & Com. Code § 2.314, *et seq*.; Utah Code Ann. § 70A-2-314, *et seq*.; Va. Code Ann. § 8.2-314, *et seq*.; Vt. Stat. Ann. tit. 9A, § 2-314, *et seq*.; Wash. Rev. Code § 62A.2-314, *et seq*.; W. Va. Code § 46-2-314, *et seq*.; Wis. Stat. Ann. § 402.314, *et seq*.; and Wyo. Stat. Ann. § 34.1-2-314, *et seq*.

128.   Defendants have, at all times, been merchants with respect to the products which were sold to Plaintiffs and the Class, under U.C.C. §§ 2-104 and 2-314, as codified in each state; and was in the business of selling such products.

129.   Pursuant to U.C.C. § 2-314, as codified in each state, each G6 and G7 sold by Defendants comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used.

130.   The ordinary intended use of the Products was to help people track their glucose.  The Products were not fit for that use—or any other use—because using the CGMs could result in injury or death.  When used for their ordinary and intended use, the Products were unsuitable and unsafe, and, thus, adulterated.

131.   Defendants breached their implied warranty of merchantability because the Products were not usable for their ordinary and intended use and were not usable for the end consumer.  At the point of sale, the Products while appearing normal—contained the Defect rendering them unusable.

132.    Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendants' breach of its implied warranty of merchantability because, had they been aware that the Products were not usable as a continuous glucose monitor, they would not have purchased, leased, or reimbursed payment for them nor would they have paid for or reimbursed payment for them.

133.    To the extent privity may be required, Plaintiffs and the members of the Class can establish privity with Defendants, or, alternatively, can establish that they fall into an exception to a privity requirement.

134.    Plaintiffs and the members of the Class relied on Defendants' warranties.

135.    Plaintiffs and the members of the Class were foreseeable and intended third-party beneficiaries of Defendants' sale of the Products, and/or of contracts between Defendants and the distributors or sellers of the Products.

136.    The Products were expected to reach and did in fact reach their ultimate consumer, including Plaintiffs, without substantial change in the condition in which they were manufactured by Defendant.

137.    In order to use their devices, Plaintiffs were also required to register their devices with Defendant, and relied on software developed and updated by the Defendant to monitor their glucose.

138.    The Products are medical devices that affect human health and life; and therefore, they implicate the broad public policy of protecting human health and life.

139.    Enforcement of a privity requirement would unfairly prejudice Plaintiffs and the members of the Class, who relied on Defendants' warranties.

140.    In addition, any purported durational limit to the implied warranty of merchantability would be procedurally and substantively unconscionable and otherwise unenforceable.

141.    Plaintiffs and other Class Members purchased the CGMs in reliance

upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

142.    The CGMs were not altered by Plaintiffs or Class Members

143.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the Class have sustained damages in an amount to be determined at trial.

## COUNT IV – Breach of the UCC Implied Warranty of Fitness
## Plaintiffs and Vast Majority of the Class Against Defendants

144.    Plaintiffs and the Class incorporate herein by reference each preceding and succeeding paragraph as if fully set forth here verbatim.

145.    This cause of action is alleged on behalf of Plaintiffs and the National Class against Defendants.

146.    "The implied warranty of fitness for a particular purpose arises under U.C.C. § 2-315 which has been codified in each state (and is recognized in Louisiana through its Civil Code).  *See, e.g.*, Ala. Code § 7-2-315, *et seq*.; Ariz. Rev. Stat. Ann. § 47-2315, *et seq*.; Cal. Com. Code § 2315, *et seq*.; Colo. Rev. Stat. § 4-2-315, *et seq*.; Conn. Gen. Stat. Ann. § 42a-2-315, *et seq*.; D.C. Code Ann. § 28:2-315, *et seq*.; Fla. Stat. Ann. § 672.315, *et seq*.; O.C.G.A. § 11-2-315, *et seq*.; Idaho Code § 28-2-315, *et seq*.; Ill. Comp. Stat. Ann. ch. 810, 5/2-315, *et seq*.; Ind. Code Ann. § 26-1-2-315, *et seq*.; Ky. Rev. Stat. Ann. § 355.2-315, *et seq*.; La. Civ. Code Ann. art. 2524, *et seq*.; Md. Code Ann., Com. Law § 2-315, *et seq*.; Mass. Gen. Laws Ann. ch. 106, § 2-315, *et seq*.; Mich. Comp. Laws Ann. § 440.2315, *et seq*.; Minn. Stat. Ann. § 336.2-315, *et seq*.; Miss. Code Ann. § 75-2-315, *et seq*.; Mo. Rev. Stat. § 400.2-315, *et seq*.; Neb. Rev. Stat. U.C.C. § 2-315, *et seq*.; Nev. Rev. Stat. § 104.2315, *et seq*.; N.J. Stat. Ann. § 12A:2-315, *et seq*.; N.Y. U.C.C. Law § 2-315, *et seq*.; N.D. Cent. Code § 41-02-32, *et seq*.; Ohio Rev. Code Ann. § 1302.28, *et seq*.; Okla. Stat. tit. 12A, § 2-315, *et seq*.; 13 Pa. Stat. Ann. § 2315, *et seq*.; Tenn. Code Ann. § 47-2-315, *et seq*.; Tex. Bus. & Com. Code § 2.315, *et seq*.;

Utah Code Ann. § 70A-2-315, *et seq*.; Va. Code Ann. § 8.2-315, *et seq*.; Wash. Rev. Code § 62A.2-315, *et seq*.; W. Va. Code § 46-2-315, *et seq*.; Wis. Stat. Ann. § 402.315, *et seq*.; and Wyo. Stat. Ann. § 34.1-2-315, *et seq*."

147.  Defendants have, at all times, been a merchant with respect to the products which were sold to Plaintiffs and the Class, under U.C.C. §§ 2-104, as codified in each state; and was in the business of selling such products.

148.  Pursuant to U.C.C. § 2-315, as codified in each state, each G6 and G7 sold by Defendants comes with an implied warranty that it will be fit for the ordinary purpose for which it would be used.

149.  Through usage of trade, manufacturers of medical devices, such as the Products, impliedly warrant that their products are usable for the end consumer.

150.  The ordinary intended use of the Products was to help people track their glucose.  The Products were not fit for that use—or any other use—because using the CGMs could result in injury or death.  When used for their ordinary and intended use, the Products were unsuitable and unsafe, and, thus, adulterated.

151.  Defendants breached their implied warranty of fitness because the Products were not usable for their ordinary and intended use and were not usable for the end consumer.  At the point of sale, the Products while appearing normal—contained the Defect rendering them unusable.

152.  Defendants, their agents, and employees knew, or should have known, that the Products suffered from a defect that causes negative health effects and/or places persons at risk for negative health effects to such an extent that the products are unusable.

153.  Plaintiffs and the Class reasonably expected, at the time of purchase, lease, or reimbursement, that the Products were usable for their ordinary and intended use.

154.  Plaintiffs and the members of the Class were injured as a direct and proximate result of Defendants' breach of its implied warranty of fitness because,

had they been aware that the Products were not usable as a continuous glucose monitor, they would not have purchased, leased, or reimbursed payment for them nor would they have paid for or reimbursed payment for them.

155.   To the extent privity may be required, Plaintiffs and the members of the Class can establish privity with Defendants, or, alternatively, can establish that they fall into an exception to a privity requirement.

156.   Plaintiffs and the members of the Class relied on Defendants' warranties.

157.   Plaintiffs and the members of the Class were foreseeable and intended third-party beneficiaries of Defendants' sale of the Products, and/or of contracts between Defendants and the distributors or sellers of the Products.

158.   The Products were expected to reach and did in fact reach their ultimate consumer, including Plaintiffs, without substantial change in the condition in which they were manufactured by Defendant.

159.   In order to use their devices, Plaintiffs were also required to register their devices with Defendant, and relied on software developed and updated by the Defendant to monitor their glucose.

160.   The Products are medical devices that affect human health and life; and therefore, they implicate the broad public policy of protecting human health and life.

161.   Enforcement of a privity requirement would unfairly prejudice Plaintiffs and the members of the Class, who relied on Defendants' warranties.

162.   In addition, any purported durational limit to the implied warranty of fitness would be procedurally and substantively unconscionable and otherwise unenforceable.

163.   Plaintiffs and other Class Members purchased the CGMs in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

164.   The CGMs were not altered by Plaintiffs or Class Members.

165.   As a direct and proximate result of Defendants' breach of the implied warranty of fitness, Plaintiffs and the Class have sustained damages in an amount to be determined at trial.

<u>**COUNT V – Negligent Misrepresentation and Omission**</u>
<u>**Plaintiffs and the Class Against Defendants**</u>

166.   Plaintiffs and the Class incorporate herein by reference each preceding and succeeding paragraph as if fully set forth verbatim.

167.   This cause of action is alleged on behalf of Plaintiffs and the vast majority of the national Class against Defendants.

168.   Defendants had or undertook a duty to accurately and truthfully represent the quality, nature, and characteristics of their CGMs.

169.   Defendants further had the opportunity to investigate, make appropriate inquiries, and test the CGMs to ensure their safety.

170.   The Defendants knew, or should have known, that the CGMs they produced were not substantially equivalent to their predicate devices and did not comply with FDA QSRs and/or were adulterated, misbranded, and/or unapproved.

171.   As set forth herein, the Defendants knew, or should have known that the CGMs were not substantially equivalent to their predicate devices and did not comply with applicable QSRs and/or were contaminated, adulterated, misbranded, and/or unapproved.

172.   Despite their awareness of the risk to consumers, and the information asymmetry between the Defendants and the patients utilizing the CGMs Defendants failed to exercise ordinary care in making representations (or in failing to disclose facts) concerning the quality, nature, and characteristics of its CGMs.

173.   Defendants negligently misrepresented or omitted facts regarding the quality, nature, and characteristics of its CGMs.  The Defendants misrepresented material facts including, inter alia, that their CGMs were substantially equivalent

to their predicate devices and/or complied with QSRs and/or were not adulterated and/or misbranded. These misrepresentations were present on, among other things, their websites, press releases, and marketing materials produced by the Defendants.

174. Defendants' statements were false at the time the misrepresentations were made (or at the time omissions were not made).

175. Defendants knew, or reasonably should have known, that its representations alleged herein were materially false or misleading, or that omission of material facts rendered such representations false or misleading. Defendants also knew, or had reason to know, that its misrepresentations and omissions would induce Class Members to make purchases of Defendants' CGMs.

176. As a direct and proximate result of Defendants' acts and omissions described herein, Plaintiffs and other Class Members have suffered harm, and will continue to do so.

177. Each Defendant's misrepresentations or omissions were material and a substantial factor in Plaintiffs and other Class Members paying for CGMs.

178. Each Defendant intended its misrepresentations or omissions to induce Plaintiff and Class Members to make purchases of CGMs, or had reckless disregard for same.

179. But for these misrepresentations (or omissions), Plaintiffs and other Class Members would not have made purchases of Defendants' CGMS.

180. Plaintiffs and other Class Members were justified in relying on Defendants' misrepresentations or omissions. The same or substantively identical misrepresentations were communicated, and/or the same or substantively identical omissions were not communicated, to each Class Member.

181. Plaintiffs and other Class Members were damaged by reason of Defendants' misrepresentations or omissions alleged herein.

\\

\\

### **COUNT V – Violation of State Consumer Protection Laws**
### **Plaintiffs and the Class Against Defendants**

182.    Plaintiffs and the Class incorporate herein by reference each preceding and succeeding paragraph as if fully set forth verbatim.

183.    This cause of action is alleged on behalf of Plaintiffs and the vast majority of the national Class against Defendants.

184.    Defendants have violated the consumer protection statutes as follows:

    a.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, *et seq.*;

    b.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arizona Rev. Stat. § 44-1522, *et seq.*;

    c.    Defendants have violated the California Unfair Competition Law by engaging in unfair or deceptive acts or practices in violation of Cal. Bus. Prof. Code § 17200, *et seq.*;

    d.    Defendants have violated the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*;

    e.    Defendants have violated the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

    f.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*;

    g.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, *et seq.*;

    h.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-

3901, *et seq.*;

i.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq.*;

j.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. State 10-1-392, *et seq.*;

k.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*;

l.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation 815 ILCS 505/1, *et seq.*;

m.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

n.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, *et seq.*;

o.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*;

p.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

q.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, *et seq.*;

r.  Defendants have engaged in unfair competition or unfair or

deceptive acts or practices in violation of Mich. Stat. § 445.901, *et seq.*;

s.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325F.67, *et seq.* and Minn. Stat. § 325F.69 *et seq.*;

t.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, *et seq.*;

u.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mo. Rev. Stat. § 407.0 10, *et seq.*;

v.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

w.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*;

x.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, *et seq.*;

y.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*;

z.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 350, *et seq.*;

aa.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*;

bb.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*

cc.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. tit. 15 § 751, *et seq.*;

dd.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*;

ee.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et seq.*;

ff.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*;

gg.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-11-1, *et seq.*;

hh.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*;

ii.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, *et seq.*; Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, *et seq.*;

jj.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq.*; and

kk.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, *et seq.*.

185.    Defendants' conduct constitutes trade or commerce or other actionable activity within the meaning of the above statutes.

186.    Plaintiffs and Class Members purchased CGMs for personal purposes.

187.    Each Plaintiff and other Class Member is a consumer or person aggrieved by Defendants' misconduct within the meaning of the above statutes.

188.    Defendants, through a pervasive pattern of unfair, false and misleading statements and omissions, manufactured and/or sold CGMs without revealing to consumers that the products were not substantially equivalent to their predicate devices and did not comply with QSRs and/or were adulterated, misbranded, and/or unapproved.

189.    In addition to these material omissions, Defendants affirmatively and unfairly or deceptively misrepresented material facts including, inter alia, that their CGMs were substantially equivalent to their predicate devices and/or complied with QSRs and/or were not adulterated and/or misbranded.    These misrepresentations were present on, among other things, the Defendants' websites, press releases, and marketing materials.

190.    Defendants' conduct was unfair, deceptive, and unconscionable in that it included (i) the manufacture and sale of products with a heightened propensity to cause physical injuries and (ii) misrepresentations and omissions of material facts concerning the characteristics and safety of CGMs that offended public policy; was immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and caused substantial harm that greatly outweighs any possible utility from the conduct.

191.    Defendants' deliberate decision to sell the CGMs after their tests revealed their lower accuracy further constitutes unfair and unconscionable

conduct.  As set forth herein, the Defendants were aware of the risks that the CGMs were contaminated, misbranded and adulterated.  Despite the known risks to consumers, the Defendants proceeded to produce and sell the defective CGMs.  Defendants' failure to ensure the safety of the devices sold to consumers offends established public policy and constitutes immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious conduct.  The act of sale of the CGMs by Defendants constituted an affirmative act in conjunction with the accompanying labels and other documents, representing that the CGMs were equivalent to the predicate devices, safe, of the specified quality, and met all applicable standards.

192.  Defendants engaged in deceptive conduct because the affirmative misrepresentations and omissions at issue were likely to, and in fact did, mislead, deceive, or cheat reasonable consumers including the Plaintiffs, who relied on these misrepresentations and omissions.  In addition, the misrepresentations and omissions were the type that tend to create a false impression.  Reasonable consumers, including the Plaintiffs, would have found it material to their purchasing decisions that the CGMs were not substantially equivalent to their predicate devices and did not comply with QSRs and/or were contaminated, adulterated, misbranded, and/or unapproved.  Knowledge of these facts would have been a substantial factor in Plaintiffs' decisions to purchase the CGMs, and they would not have made these purchases in the absence of Defendants' wrongful conduct.

193.  Defendants' advertising in the conduct of business was deceptive because the misrepresentations and omissions had the capacity, tendency, and effect of deceiving reasonable consumers, including the Plaintiffs.  Reasonable consumers, including the Plaintiffs, would have found it material to their purchasing decisions that CGMs were not substantially equivalent to their Predicate devices and did not comply with QSRs and/or were contaminated,

adulterated, misbranded, and/or unapproved.

194.  Defendants owed Plaintiffs and Class Members a duty to disclose these facts because they were known and/or accessible exclusively to Defendants (and potentially other unnamed parties other than Plaintiffs and Class Members), who had exclusive and superior knowledge of the facts; because the facts would be material to reasonable consumers; because Defendants concealed them; because Defendants intended for consumers to rely on the omissions in question; and because Defendants made misleading partial representations concerning the same subject matter as the omitted facts.

195.  To the extent applicable, Defendants knew, intended, or should have known that their fraudulent and deceptive acts, omissions, or concealment would and did induce reliance and that reliance can be presumed under the circumstances. As a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and other Class Members have suffered damages– an ascertainable loss – in an amount to be proved at trial.

196.  Plaintiffs justifiably relied on Defendants' representations that the CGMs they were purchasing and ingesting were equivalent to the RLD's, safe and free from contamination.  Plaintiffs further relied on the Defendants' advertised reputations and representations that they exercised the highest degree of care to ensure safety and quality at all times and the Defendants' affirmative assurances that their CGMs were safe for use.

197.  Defendants engaged in unfair and deceptive conduct by misleading, through affirmative misrepresentation and omission, consumers as to the content of the CGMs.  In fact, the products never should have been offered to consumers in the first place, and could not have been in the absence of the stated wrongful conduct.

198.  As demonstrated herein, Defendants engaged in patently unlawful conduct through their manufacturing, receipt, and sale of contaminated, adulterated

and misbranded prescription drugs.[1]

199.   Defendants' conduct actually and proximately caused actual damages to Plaintiffs. Absent Defendants' unfair and deceptive conduct, Plaintiffs and class members would have behaved differently and would not have purchased the CGMs.

200.   Defendants' misrepresentations and omissions induced Plaintiffs to purchase the CGMs they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered into, economically harming and damaging Plaintiffs.

## VII.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and the Class and the Sub-classes, request the following relief:

A.   An order certifying that this action is properly brought and may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs be appointed as Class Representatives for the Class and Sub-classes, and that Plaintiffs' counsel be appointed Class Counsel;

C.   An award of restitution and/or disgorgement as against all Defendants except under the CLRA;

D.   An award of damages as against all Defendants jointly and severally except for damages under the CLRA;

E.   Such civil penalties and additional damages as the law may allow against all Defendants except for civil penalties and damages under the CLRA;

F.   Such injunctive relief as the law may allow against all Defendants;

---

[1] *See* 21 U.S.C. §§ 331(a-c), 331(g)

G.     An award of reasonable attorneys' fees and other costs, including costs of Court, against all Defendants;

H.     Pre-judgment and post-judgment interest at the maximum rates permissible at law or in equity against all Defendants; and

I.      As against all Defendants, such other relief at law or equity as the Court may deem just and proper except for damages under the CLRA.

## VIII.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all claims and causes of action in this lawsuit.

Dated: January 7, 2026

Respectfully Submitted,
**WISNER BAUM, LLP**

By:     /s/ *Behram V. Parekh*
        BEHRAM V. PAREKH
        bparekh@wisnerbaum.com
        J. Conor Kennedy (SBN 354542)
        ckennedy@wisnerbaum.com
        11111 Santa Monica Blvd., Suite 1750
        Los Angeles, California 90025
        Telephone: (310) 207-3233

        *Counsel for Plaintiffs and all others similarly situated*